**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPHINE GRIMM and | ) | |
| LESTER GRIMM, | ) | |
|       Plaintiffs, | ) | |
| | ) | Civil Action No.08-747 |
|     v. | ) | Judge Nora Barry Fischer |
| | ) | |
| DISCOVER FINANCIAL SERVICES, | ) | |
|       Defendant. | ) | |

| | | |
|---|---|---|
| JOSEPHINE GRIMM and | ) | |
| LESTER GRIMM, | ) | |
|       Plaintiffs, | ) | |
|     v. | ) | Civil Action No. 08-832, related. |
| | ) | Judge Nora Barry Fischer |
| BANK OF AMERICA, | ) | |
|       Defendant. | ) | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

Plaintiffs Josephine Grimm and Lester Grimm (hereinafter "Plaintiffs") filed the instant civil

actions against Defendants Discover Financial Services[1] (hereinafter "Discover") and Bank of

America[2] alleging eight (8) causes of action arising out of alleged fraudulent activity associated with

---

[1]

    The Court notes that Defendant Discover Financial Services alleges that they are now known as DFS Services LLC, yet to date have failed to amend the caption in this matter. (Civil Action No. 08-747, Docket No. 4).

    [2] Similar to Discover, Bank of America contends that they are erroneously being sued under such name. Instead, the proper Defendant is FIA Card Services, N.A. However, to date the caption has not been amended to reflect same. (Civil Action No. 08-832, Docket No. 6 at 1).

1

credit card accounts Plaintiffs held with each Defendant. In each of the aforementioned cases,

Plaintiffs allege: (1) breach of implied contract; (2) negligence; (3) fraudulent misrepresentation; (4)

negligent misrepresentation; (5) breach of fiduciary duty; (6) violations of the Pennsylvania Unfair

Trade Practices/Consumer Protection Law, 73 P.S. § 201, *et seq.* ("UTP/CPL"); (7) violation of the

Truth in Lending Act, 15 U.S.C. § 1700, *et seq.* ("TILA") and the Consumer Credit Protection Act

15 U.S.C. § 1643 ("CCPA"); and (8) negligence *per se.* (Civil Action No. 08-747, Docket No. 1,

Exhibit 4; Civil Action No. 08-832, Docket No. 1, Exhibit B). Pending before the Court are

Defendant Discover's Motion to Dismiss Plaintiffs' Amended Complaint (Civil Action No. 08-747,

Docket No. 4) and Defendant Bank of America's Motion to Dismiss Plaintiffs' Amended Complaint

(Civil Action No. 08-832, Docket No. 6).

The pending Motions are markedly similar in their factual nature and the arguments raised.

Accordingly, this Memorandum Opinion will address both Motions.

## II. PROCEDURAL HISTORY

### A. Plaintiffs v. Discover (08-747)

Plaintiffs filed their Amended Complaint on May 16, 2008 in the Court of Common Pleas

of Westmoreland County, Pennsylvania.[3] (Civil Action No. 08-747, Docket No. 1, Exhibit 4). On

May 30, 2008, Discover timely removed the action to federal court based on this Court's federal

---

[3]

Prior to this, Plaintiffs filed a Complaint in the Court of Common Pleas of Westmoreland County on July 30, 2007, naming 16 defendants, including each of the Defendants herein. *Lester Grimm, et. al. v. Advanta Bank Corp., et. al.*, Westmoreland County, No. 07-CI-05923. The state court dismissed the Original Complaint while granting Plaintiffs leave to amend. (Civil Action No. 08-747, Docket No. 1).

2

question jurisdiction pursuant to 28 U.S.C. § 1331, in that Plaintiffs' claims assert violations of TILA and the CCPA, (Civil Action No. 08-747, Docket No. 1). Thereafter, on June 19, 2008, Discover filed a Motion to Dismiss Plaintiffs' Amended Complaint. (Civil Action No. 08-747, Docket No. 4). In response, on July 9, 2008, Plaintiffs filed a Motion to Strike Discover's Motion to Dismiss and a Response to Discover's Motion to Dismiss Plaintiffs' Amended Complaint. (Civil Action No. 08-747, Docket Nos. 6 and 8). On July 21, 2008, Discover filed a Response to Plaintiffs' Motion to Strike. (Civil Action No. 08-747, Docket No. 10). Subsequently, on July 22, 2008, Discover filed a Reply to Plaintiffs' Response to Discover's Motion to Dismiss. (Civil Action No. 08-747, Docket No. 11). On July 22, 2008, this Court denied Plaintiffs' Motion to Strike. (Civil Action No. 08-747, Docket No. 12). On August 19, 2008, Plaintiffs filed a Supplement to their Response to Discover's Motion to Dismiss. (Civil Action No. 08-747, Docket No. 15). Thereafter, on September 2, 2008, Discover filed a Reply to Plaintiffs' Supplement. (Civil Action No. 08-747, Docket No. 21). The Court conducted a Case Management Conference and heard argument on any pending motions in the related cases on September 4, 2008. (Civil Action No. 08-747, Docket No. 24). During said conference, Plaintiffs requested leave to file a supplemental brief in regard to the pending motion, which the Court granted. (Civil Action No. 08-747, Docket No. 24). Thereafter, on September 15, 2008, Plaintiffs filed a Second Supplement to their Response to Defendant's Motion to Dismiss. (Civil Action No. 08-747, Docket No. 28). Finally, on October 6, 2008, Plaintiffs and Discover each filed a final supplement to their respective briefs, addressing choice of law issues. (Civil Action No. 08-747, Docket Nos. 36 and 37). The motion is now ripe for disposition.

**B.      Plaintiffs v. Bank of America (08-832)**

With respect to Civil Action No. 08-832, Plaintiffs filed an Amended Complaint on May 16, 2008 in the Court of Common Pleas of Westmoreland County, Pennsylvania. (Civil Action No. 08-832, Docket No. 1, Exhibit B). On June 16, 2008, Bank of America timely removed the action to federal court based on this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that Plaintiffs' claims assert violations of TILA and the CCPA. (Civil Action No. 08-832, Docket No. 1). On June 23, 2008, Bank of America filed a Motion to Dismiss Plaintiffs' Amended Complaint. (Civil Action No. 08-832, Docket No. 6). Subsequently, on July 14, 2008, Plaintiffs filed a Response to Bank of America's Motion to Dismiss Plaintiffs' Amended Complaint. (Civil Action No. 08-832, Docket No. 9). Thereafter, on July 24, 2008, Bank of America filed a Reply to Plaintiffs' Response. (Civil Action No. 08-832, Docket No. 11). In turn, on July 29, 2008, Plaintiffs filed a Sur-Reply to Bank of America's Reply. (Civil Action No. 08-832, Docket No. 13). On August 19, 2008, Plaintiffs filed a Supplement to their Response to Bank of America's Motion to Dismiss. (Civil Action No. 08-832, Docket No. 17). The Court conducted a Case Management Conference and heard argument on any pending Motions in the related cases on September 4, 2008. (Civil Action No. 08-832, Docket No. 22). On September 15, 2008, Plaintiffs filed an additional Supplement to their Response to Defendant's Motion to Dismiss. (Civil Action No. 08-832, Docket No. 25). Finally, on October 6, 2008, Plaintiffs and Discover each filed a final supplement to their respective briefs, addressing choice of law issues. (Civil Action No. 08-832, Docket Nos. 28 and 29). The motion is now ripe for disposition.

**III.      FACTUAL BACKGROUND**

## A.     Plaintiffs v. Discover (Civil Action No. 08-747)

### *Statement of Facts*

Between October of 2005 and September of 2006, Plaintiffs allege that they held "at least" one (1) credit card account with Discover.  (Civil Action No. 08-747, Docket No. 1, Exhibit 1 at ¶5).[4]   During this time period, Plaintiffs contend that, "upon information and belief," there were fraudulent charges made to their credit card.  (*Id.* at ¶6).  During the oral argument heard by this Court, Plaintiffs' counsel informed the Court that the fraudulent transactions associated with Plaintiffs' Discover credit card amounted to approximately $2,500.  (Transcript of Oral Argument ("Arg't. Trans.")  dated September 4, 2008 at 11: 21).

Plaintiffs allege that they were physically disabled while the fraudulent activity associated with their credit card account occurred and thus, were unable to detect the fraudulent charges until August of 2006.[5]   (Docket No. 1, at ¶¶7-8).  According to letters from their treating physicians attached to the Amended Complaint, Mr. Grimm suffers from severe cardiac problems, including the sequelae of three cerebral vascular accidents ("CVA"),[6] while Mrs. Grimm suffers from fourth

---

[4]

Hereinafter, the Court will cite Plaintiffs' Amended Complaint as "Docket No. 1" in each of the above captioned cases.

[5]

Plaintiffs concede that they do not have possession of the monthly credit card statements corresponding to the time period relevant to the instant case.  However, Plaintiffs contend that the fraudulent activity can be evidenced by the relevant statements in the possession of Defendant. (Civil Action No. 08-747, Docket No. 1 at ¶6).

[6]

A CVA is an apoplectic stroke, a hemorrage into the brain or blockage of a blood vessel in the brain.  1 J.E. Schmidt, M.D., ATTORNEYS' DICTIONARY OF MEDICINE C-164 (2007).

stage Lyme disease,[7] depression, and neurological problems. (*Id.* at Exhibits 1-2).

After detecting the fraudulent activity, Plaintiffs notified Discover and the Secret Service of the fraudulent charges. (*Id.* at ¶¶8-9). A special agent with the Secret Service conducted an investigation into the fraudulent activity associated with Plaintiffs' credit card accounts. In a letter addressed to Plaintiffs' counsel dated December 11, 2006, the Secret Service agent stated that the Plaintiffs were defrauded by unknown individuals in an amount in excess of $600,000.00. (*See id.*, Exhibit 4). The agent further stated that it appeared that Plaintiffs were defrauded through the use of hidden computer software known as "spyware" embedded within RiverBelleCasino.com,[8] a subsidiary of Belle Rock Entertainment, an online gambling website which Mrs. Grimm frequented.[9] (*Id.*). In fact, during the course of the Secret Service's investigation, Mrs. Grimm claimed that she

_____

[7]

Lyme disease is "a recurrent, multisystemic disorder caused by the sprochete *Borrelia burgdoferi*; vectors for human infection are the ticks ... It begins in most cases with erythema chronicum migran (at least 5 cm in diameter), which is followed by myalgia, arthritis of large joints, stiff neck, nervous system problems, cardiovascular problems, and other systemic symptoms, such as chills, fever, headache, malaise, and vomiting." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 545 (31st ed. 2007).

[8]

River Belle Online Casino which was launched in 1997, is a member of the Interactive Gaming Council (IGC), and is licensed to conduct business by the Government of Gibralter. The site touts that "[y]ou can play for fun, or play for real money by downloading the Online casino software." River Belle Online Casino offers over 200 interactive games. *See* http://www.riverbelle.com/portal/about-us.asp?VT=524285658&EventId=27227 (last visited on October 24, 2008).

[9]

According to the Federal Trade Commission's consumer protection website, spyware is computer software installed on one's computer without his consent in order to monitor or control computer use. Spyware may be used to "send pop-up ads, redirect one's computer to certain websites, monitor internet surfing, or record keystrokes, which could lead to identity theft." *See* http://www.ftc.gov/bcp/edu/pubs/consumer/alters/alt142.pdf (last visited on October 24, 2008).

voluntarily submitted personal information to RiverBelleCasino.com in order to download online gambling software. (*Id*.). Subsequently, numerous individual credit cards were obtained by unidentified third parties in Mrs. Grimm's name, and these credit cards accumulated large amounts of unauthorized charges. (*Id*.). Plaintiffs allege that Discover was obligated to provide fraud protection on their Discover credit card and failed to satisfy this obligation by overlooking the fraudulent activity and refusing to compensate Plaintiffs for the fraudulent charges. (*Id.* at ¶¶11-12).

### The Discover Agreement

Plaintiffs have attached to their Amended Complaint the 2005 credit card agreement which they claim governs their account with Discover. (*See id.*, Exhibit 5). Plaintiffs assert that they "put their full faith and trust in Discover to act in compliance with the terms and conditions of the [c]ontract." (*Id.* at ¶14). The contractual language pertinent to the instant dispute is detailed below.

Under the bold-faced heading "ACCEPTANCE OF AGREEMENT" on page two (2), the agreement states that "[t]he use of your Account or a Card by you or an Authorized user, or your failure to cancel your Account within 30 days after receiving a Card, means you accept this agreement[.]" (*Id.*, Exhibit 5 at 2).

Under the heading "UNAUTHORIZED USE" on page three (3), the agreement states:

> [i]f a Card is lost or stolen, or if you think that someone is using your Account or a Card without your permission, notify us immediately...You agree to assist us in determining the facts relating to any theft or possible unauthorized use of your Account or a Card and to comply with such procedures as we may require in connection with our investigation.

(*Id.* at 3).

Under the heading "PROMISE TO PAY" on page (4), the agreement states:

> [y]ou agree to pay us in U.S. dollars for all purchases, cash advances and balance transfers, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or a Card, even if you do not notify us that others are using your Account or Card.

(*Id.* at 4).

With respect to Discover's Privacy Policy, which is outlined in detail on pages fifteen (15) through eighteen (18), the agreement states:

> [o]ur mission is to provide you with superior products and services, along with the peace of mind knowing that your privacy is secure. We understand your concerns about guarding information about you and your Account. We want to assure you that we have taken steps, and will continue to take steps to safeguard that information.

(*Id.* at 15). Furthermore, with respect to the confidentiality, security and integrity of information Discover collects about its cardholders, the agreement states:

> [w]e maintain physical, electronic and procedural safeguards to protect the information we collect about you. Access to such information is restricted to individuals who need it in order to service your Account or provide products and services to you, and who are trained in the proper handling of such information.

(*Id.* at 17). The agreement does give cardholders the option, either through a telephone call or through writing, to notify Discover of their privacy preferences and to direct Discover not to share certain information it collects about them. (*Id.*).

Finally, the agreement sets forth cardholder's rights and Discover's responsibilities under the Fair Credit Billing Act ("FCBA"). As to the cardholder, the agreement states:

> [i]f you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet of paper at the address listed on your bill for Notice of Billing errors. Write as soon as possible. We must hear from you no later than 60 days after

we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

(*Id.* at 18-19).  As to Discover, the agreement states:

[w]e must acknowledge your letter within 30 days, unless we have corrected the error by then.  Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent...You do not have to pay any questioned amount, but you are still obligated to pay the parts of your bill that are not in question.

(*Id.* at 19).

## B.     Plaintiffs v. Bank of America (Civil Action No. 08-832)

### *Statement of Facts*

Between October of 2005 and July of 2006, Plaintiffs allege that they held "at least" five (5) credit card accounts with Bank of America.  (Civil Action No. 08-832, Docket No. 1 at ¶5).   During this time period, Plaintiffs allege that there were fraudulent charges made to their credit cards in excess of $56,300.00.  (*Id.* at ¶6).   Furthermore, Plaintiffs allege that Bank of America failed to notify them that charges in unusually large amounts as well as repeated charges by the same entities, "Flightserv"[10] and "Alpharay Bre,"[11] were being made to their credit cards.   (*Id*. at ¶¶7-8).

As described above, Plaintiffs allege that they were physically disabled while the fraudulent

---

[10]

Flightserv appears to be an Atlanta, Georgia based travel services company. *See* http://www.bizjournals.com/atlanta/stories/2004/06/21/story7.html (last visited on October 24, 2008).

[11]

After an extensive internet and periodical search, the Court has been unable to find any information relating to any entity known as "Alpharay Bre."

activity associated with their credit card accounts occurred and thus, were unable to detect the fraudulent charges until October of 2006. (*Id.* at ¶¶9-10). After detecting the fraudulent activity, Plaintiffs notified Bank of America and the Secret Service of the fraudulent charges. (*Id.* at ¶¶10-11). As detailed above, a special agent with the Secret Service conducted an investigation into the fraudulent activity associated with Plaintiffs' credit card accounts. Plaintiffs allege that Bank of America was obligated to provide fraud protection on their credit cards and failed to satisfy this obligation by overlooking the fraudulent activity and only "reimbursing" Plaintiffs for $5,900.00 of the fraudulent charges. (*Id.* at ¶¶13-14).

### *The Bank of America Agreements*[12]

Plaintiffs have attached to their Amended Complaint the credit card agreements that they claim govern their accounts with Bank of America. *(See Id.*, Exhibits 5-8). Plaintiffs claim that, upon opening the Bank of America credit cards, they "entered into a contract with Bank of America." (*Id.*, Docket No. 1 at ¶16). Furthermore, Plaintiffs claim that they "put their full faith and trust in Bank of America to act in compliance with the terms and conditions of the Contract." (*Id.* at ¶17). The contractual language in the agreement pertinent to the instant dispute will be detailed below.

---

[12]

While language from only one of the agreements submitted by Plaintiffs will be referenced in this section, the Court notes that the additional agreements submitted by Plaintiffs contain similar, and in some instances identical, language. (Civil Action No. 08-832, Docket No. 1, Exhibits 5-8).

Additionally, the agreements identified by Plaintiffs with respect to their Bank of America accounts all reference MBNA, as opposed to Bank of America. In 2006, subsequent to Plaintiffs' acquisition of the relevant credit cards, Bank of America acquired MBNA Corporation. http://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0000838440&owner=include&count=40 (last visited on Nov. 4, 2008). Further, as a result of additional mergers, Bank of America is now named FIA Card Services, N.A.(Civil Action No.08-832, Docket No.6 at 1).

Under the heading "YOUR CONTRACT WITH US" on page two (2), the agreement states:

> [t]he terms of this Agreement apply to you if any of you applied for and were granted an account, used the account, maintained the account, and/or otherwise accepted the account. You agree to the terms and conditions of this Agreement.

(*Id.*, Exhibit 6 at 2). Under the bold-faced heading "Purposes For Using Your Account," the agreement states that "[y]ou may not use or permit your account to be used to make any illegal transaction." (*Id.* at 18).

Plaintiffs' agreement with Bank of America contains a lengthy discussion of Bank of America's information sharing policy. (*See Id.* at 2-5). The agreement states that Bank of America shares information with entities, both inside and outside of its organization, when it believes such information is necessary to offer Bank of America's products and services efficiently. (*Id.* at 3). However, the agreement does give cardholders the option, by way of a telephone call to an automated response line, to notify Bank of America if they do not want their personal information shared outside of Bank of America. (*Id.* at 5).

Regarding a cardholder's personal information, the agreement contains a section entitled "Tips to Protect Your Information," which describes ways in which cardholders can protect their personal information. (*Id.* at 6). According to this section, cardholders should "[p]ay attention to billing cycles and statements," and "[c]heck account statements carefully to ensure all charges, checks, or withdrawals are authorized." (*Id.* at 7). Furthermore, if a cardholder suspects that he has been a victim of identity theft, he should take immediate action and keep records of his conversations

and correspondence.[13] (*Id.*).

Similar to Plaintiffs' agreements with Discover, the Bank of America agreement also sets forth a cardholder's rights and Bank of America's responsibilities under the FCBA. (*Id.* at 15).[14]

Finally, the Court notes that one of Plaintiffs' agreements with Bank of America contains an indemnification clause which states, *inter alia,* that cardholders agree to hold Bank of America "harmless from and against any and all claims, damages, judgments, penalties, costs, and expenses, including court costs and attorney's fees, arising directly or indirectly from....any negligence or willful misconduct by you, or from any violation of law or regulation by you." (*See Id.*, Exhibit 7 at 10).

## IV.    STANDARD OF REVIEW

A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Ehrheart v. Verizon Wireless*, Civil Action No. 07-1165, 2008 U.S. Dist. LEXIS 73416, at *3 n. 1 (W.D. Pa. Sept. 25, 2008)(citing *Bell Atlantic Corp. v. Twombly*, – U.S.–, 127 S.Ct. 1955 (2007)). A claim for relief under Federal Rule of Civil Procedure 8(a)(2) "requires more than labels and conclusions, and

---

[13]

In the event of suspected identity theft, the agreement also states that cardholders should: (1) contact creditors for any accounts that have been tampered with or opened fraudulently; (2) contact the fraud departments of each of the three major credit bureaus; and (3) file a report with local police or the police in the community where the identity theft took place and get a copy of the police report. (Civil Action No. 08-832, Docket No. 1, Exhibit 6 at 7-8).

[14]

Because the language contained in this portion of the agreement is identical to that which is contained in the Discover agreement cited above it will not be repeated here. (*See* above at 7-8).

a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1965. A plaintiff must aver sufficient factual allegations in order "to raise a right to relief above the speculative level." *Ayers v. Osram Slyvania, Inc.*, Civil Action No. 07-1780, 2008 U.S. Dist. LEXIS 72644, at *6 (M.D. Pa. Sept. 24, 2008) (citing *Twombly*, 127 S.Ct. at 1965). In considering a Rule 12(b)(6) motion, a court must view all of the plaintiff's allegations as true and construe all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, Civil Action No. 06-4688, 2008 U.S. App. LEXIS 19225, at *10 (3d Cir. Sept. 9, 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). . However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 215 (3d Cir.2002); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 n. 8 (3d Cir.1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). Generally, this does not impose a heightened burden on the claimant above that already required by Rule 8, but instead calls for fair notice of the factual basis of a claim while "rais[ing] a reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, Civ. A. No. 08-411, 2008 U.S. Dist. LEXIS 57988, at * 7 (W.D. Pa. July 30, 2008) (citing *Phillips*, 515 F.3d at 234; and *Twombly*, 127 S.Ct. at 1964-65).

## V.    CHOICE OF LAW

Each credit card agreement involving Plaintiffs, Discover, and Bank of America contains a choice of law provision. Discover's agreement states that: "[t]his Agreement will be governed by

the laws of the State of Delaware and applicable federal laws." (Civil Action No. 08-747, Docket No. 1, Exhibit 5 at 9). Similarly, Bank of America's agreements contain the clause: "[t]his Agreement is governed by the laws of the State of Delaware, without regard for its conflict of laws principles, and by any applicable federal laws. (Civil Action No. 08-832, Docket No. 1, Exhibit 5 at 7; Exhibit 6 at 26; Exhibit 7 at 40).

A federal court sitting in diversity must apply the choice of law rules of the forum state. *Knuzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Klaxon v. Stentor Electric*, 313 U.S. 487, 497 (1941)). Accordingly, the Court will apply Pennsylvania choice of law rules.

With respect to breach of contract cases, Pennsylvania courts have adopted § 187 of the Restatement (Second) of Conflict of Laws, which generally honors the intent of the contracting parties and enforces choice of law provisions in contracts executed by them. *Kruzits*, 40 F.3d at 55 (citing *Smith v. Commonwealth National Bank*, 557 A.2d 775, 777 (Pa. Super. 1989) *appeal denied*, 569 A.2d 1369 (Pa. 1990)).[15] However, the extent to which, and to what types of claims,

---

[15]
Section 187 provides:
(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
(2) the law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by explicit provision in their agreement directed to that issue, unless either:
  (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
  (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
(3) In the absence of a contrary indication of intention, the reference is to the local law of the

14

Pennsylvania courts will apply a choice of law provision in a contract is determined by a number of factors.

One such factor is the breadth of the contractual choice of law provision.  Pennsylvania courts analyze choice of law provisions to "determine, based on their narrowness or breadth, whether the parties intended to encompass all elements of their association." *Comosiflex, Inc. v. Advanced Cardiovascular Systems, Inc.*, 795 F. Supp. 151, 157 (W.D. Pa. 1992).  Narrow choice of law provisions stating that a contract's terms or enforcement are to be governed, or  construed,  by the laws of another state are generally interpreted by Pennsylvania courts to relate only to the construction and interpretation of the contract at issue. *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa, Inc.*, 848 F. Supp. 569 (E.D.Pa. 1994).  For example, in *Jiffy Lube*, the court held that "[c]ontractual choice of law provisions ... do not govern tort claims between the contracting parties unless the fair import of the provision embraces all aspects of the legal relationship." *Id.* at 576.  Similarly, in *Coram Healthcare Corp. v. Aetna U.S. Healthcare Inc.*, 94 F.Supp. 2d 589 (E.D. Pa. 1999), the court held that a choice of law provision that stated "[t]his agreement shall be governed by the state of Delaware" applied only to claims relating to parties' rights and duties under the contract itself. *Id*. at 594.  The court found that had the parties wanted the choice of law provision to apply to other matters, they could have inserted language that Delaware law governed "all matters, including, but not limited to, matters of *validity*, construction, effect or performance." *Id.* (emphasis in original).

---

state of the chosen law.

Restatement (2d) of Conflict of Law § 187 (1971).

More recently, the United States Court of Appeals for the Third Circuit held that a contractual choice of law provision in a merger agreement which stated that "this agreement will be governed by, and construed and enforced in accordance with, the laws of [Pennsylvania]," was "narrowly drafted to encompass only the underlying merger agreement itself, and not necessarily the entire relationship between [the parties]." *Black Box Corp. v. Markam*, 127 Fed. Appx. 22, 25 (3d Cir. 2005).[16] Specifically, with respect to tort claims, courts within this circuit have held that "narrow choice of law provisions are generally held insufficient to encompass the contracting parties' tort claims." *Wright v. McDonald's Corp.*, 1993 WL 53582, at *7 n.6 (E.D. Pa. 1993).

Based on the above cited principles, the Court finds that the agreements between Plaintiffs and each Defendant are narrowly drawn because they are similar in both form and substance to the agreements in *Comisoflex*, *Jiffy Lube*, and *Black Box* cited above. The language in each provision speaks only to the enforcement of each agreement itself, and not to all matters relating to the parties. (Civil Action No. 08-747, Docket No. 1, Exhibit 5 at 9; (Civil Action No. 08-832, Docket No. 1, Exhibit 5 at 7; Exhibit 6 at 26; Exhibit 7 at 40). Moreover, the agreements are silent as to whether their choice of law provisions shall apply to tort claims. (*Id.*) Therefore, it cannot be said that "the fair import of the provision embraces all aspects of the legal relationship" between Plaintiffs and Bank of America and Discover. *Jiffy Lube*, 848 F. Supp. at 576. Accordingly, the Court upholds each choice of law provision with respect to Plaintiffs' breach of implied contract claims, but declines to enlarge the scope of these provisions to hold that they apply to Plaintiffs' remaining

---

[16] The Court notes that it does not cite said case for it precedential value, but rather its factual similarity to the contract language in this case.

claims.

When a choice of law provision in a contract does not apply to particular claims, as is the case here, the claims not covered by the provision must be analyzed under the factors set forth by the United States Court of Appeals for the Third Circuit in *Hammersmith v. TIG Insur. Co.*, 480 F.3d 220 (3d Cir. 2007). In the first part of this analysis, a court must determine if there is an actual or real difference between potentially applicable laws. *Hammersmith*, 480 F.3d at 230 (citing *Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.*, 272 F.Supp. 2d 482, 490 n.9 (E.D.Pa. 2003) (explaining that courts must determine whether states would actually treat an issue any differently)). If no difference between the applicable laws of each state exists, a choice of law analysis is unnecessary. *Id*. After a review of the applicable laws in Pennsylvania and Delaware relevant to the instant cases and for the reasons that follow, the Court finds that Delaware courts would not treat Plaintiffs' remaining claims differently than courts in Pennsylvania.

With respect to Plaintiffs' claims for negligence, both Pennsylvania and Delaware law require that a plaintiff allege: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the defendant's breach was a proximate cause of an injury to the plaintiff; and (4) the plaintiff suffered actual loss or damages. *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998); *Russell v. K-Mart Corp.*, 761 A.2d 1, 9 (Del. 2000).

Regarding a claim for fraudulent misrepresentation, Pennsylvania and Delaware law requires a plaintiff to allege: (1) a false representation by the defendant which is material to the transaction; (2) knowledge of the representation's falsity or reckless indifference to its truthfulness; (3) an intent to mislead the plaintiff into relying upon it; (4) the plaintiff's action or inaction taken in justifiable

reliance upon the representation; and (5) an injury proximately caused by the plaintiff's reliance. *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994); *E.I. Dupont de Nemours & Co. v. Florida Evergreen Foliage*, 744 A.2d 457, 461-62 (Del. 1999).

A plaintiff alleging negligent misrepresentation must allege, pursuant to both Pennsylvania or Delaware law: (1) a false representation by the defendant which is material to the transaction; (2) made under circumstances in which the defendant ought to have known its falsity; (3) with the intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) an injury proximately caused by the plaintiffs' reliance. *Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 277(Pa. 2005) (citing *Gibbs*, 647 A.2d at 890); *Zirn v. VLJ Corp.*, 681 A.2d 1050, 160-61 (Del. 1996) (citing *Stephenson v. Capano Devel., Inc.*, 462 A.2d 1069, 1074 (1983)).

With respect to a breach of fiduciary duty claim, plaintiffs in both Pennsylvania and Delaware are required to allege: (1) the existence of a confidential or fiduciary relationship; (2) the defendant's failure to act in good faith and solely for the benefit of the plaintiff with respect to matters within the scope of the confidential or fiduciary relationship; and (3) an injury to the plaintiff proximately caused by the defendant's failure to act. *Baker v. Family Credit Counseling Corp.*, 440 F.Supp.2d 392, 414-415 (E.D. Pa. 2006) (citing Pa. S.S.J.I. § 4.16) ; *see also McDermott v. Party City Corp.*, 11 F.Supp. 2d 612, 626 n.18 (E.D.Pa. 1998)(applying Pennsylvania law)); *Heller v. Kiernan*, 2002 Del. Ch. LEXIS 17, at *3 (Del. Ch. Jan. 29, 2002) (citing *York Linings v. Roach*, 1999 Del. Ch. LEXIS 160, at *5 (Del. Ch. July 28, 1999)).

Finally, when claiming negligence *per se* pursuant to either Pennsylvania or Delaware law,

a plaintiff must allege: (1) the defendant's violation of a statute; (2) the statute's purpose applies to the plaintiff, at least to the extent of protecting the interests of a specific class of people, to which plaintiff belongs; (3) the statute applies to the conduct of the defendant; and (4) injuries proximately caused by the defendant's violation of the statute. *Mahan v. Am-Gard, Inc.*, 841 A.2d 1052, 1059 (Pa. Super. 2003) (citing *Wagner v. Anzon*, 684 A.2d 570, 574 (Pa. Super. 1996)); *Wright v. Moffitt*, 437 A.2d 554, 557 (Del. 1981) (citing *Wealth v. Renai*, 114 A.2d 809, 811 (Del. Super 1954).

Based on the foregoing, the Court finds no appreciable difference between the laws of Pennsylvania and Delaware with respect to Plaintiffs' claims for breach of fiduciary duty and tort. Furthermore, in their briefs addressing the choice of law issue, both Plaintiffs and Defendants agree that the laws of Pennsylvania and Delaware are not materially different with respect to Plaintiffs' tort claims. (Civil Action No. 08-747, Docket No. 37 at 4-5; Civil Action No. 08-832, Docket No. 28 at 3-4 and Docket No. 29 at 5-6). Due to the Court's situs, the lack of difference between each states' laws, and Plaintiffs' and Defendants' agreement that Pennsylvania law should apply to the tort claims, the Court will apply Pennsylvania law to Plaintiffs' breach of fiduciary duty and remaining tort claims.

## VI.    ANALYSIS

As detailed above, Plaintiffs have brought eight claims against Discover and Bank of America, which include:  (1) breach of implied contract; (2) negligence; (3) fraudulent misrepresentation; (4) negligent misrepresentation; (5) breach of fiduciary duty; (6) violations of the UTP/CPL; (7) violations of TILA, 15 U.S.C. § 1700, *et seq*., and the CCPA, 15 U.S.C. § 1643; and (8) negligence *per se.*  Both Discover and Bank of America have moved to dismiss all eight claims.

The Defendants have raised a number of different arguments in support of their motions, which the Court will address, in turn.

### *Breach of Implied Contract*[17]

Plaintiffs allege that when they opened credit cards with Defendants, they entered into contracts. (Civil Action No. 08-747, Docket No. 1 at ¶ 14; Civil Action No. 08-832, Docket No. 1 at ¶ 16). According to Plaintiffs, said contracts included an implied term that the Defendants would provide fraud protection; hence, Defendants breached said implied contract by failing to protect the Plaintiffs when the fraudulent charges occurred. (Civil Action No. 08-747, Docket No. 1 at ¶16; Civil Action No. 08-832 at Docket No. 1 at ¶ 18). Discover and Bank of America contend that Plaintiffs' breach of implied contract claim warrants dismissal because an express contract exists between the parties which governs the subject matter of the dispute, and would negate Plaintiffs' ability to bring a claim under an implied contract theory. (Civil Action No. 08-747, Docket No. 4 at 4-5; Civil Action No. 08-832, Docket No. 6 at 3-4). Indeed, pursuant to Delaware law, an implied-in-fact contract cannot be found when the parties have an express agreement dealing with the same subject matter. *Chase Manhattan Bank v. Iridium Africa Corp.*, 294 F.Supp.2d 634, 636 (D.Del. 2003) (citing *In re Penn Central Transp. Co.*, 831 F.2d 1221, 1229 (3d Cir. 1987); *Klebe v. United States*, 263 U.S. 188, 191-92 (1923)) (emphasis added). To be valid, an implied contract must be "*entirely* unrelated to the express contract." *Id.* (citing *ITT Fed. Support Serv., Inc. v. U.S.*,

_____

[17]

As explained *supra*, the Court will address Plaintiffs' breach of implied contract claims pursuant to Delaware law.

532 F.2d 522, 528 (Ct. Cl. 1976)). Here, Plaintiffs have attached cardholder agreements to their Amended Complaints, which they admit are express contracts governing their relationship with Defendants. (Civil Action No. 08-747, Docket No. 1, Exhibit 5; Civil Action 08-832, Docket No. 1, Exhibits 5-9). Furthermore, the Court is unable to find that the alleged implied contract is entirely unrelated to the subject matter of the express contract. Given the Plaintiffs' recognition that express contracts between the parties exist which govern the subject matter of the instant dispute and the relationship between the parties, Plaintiffs' breach of implied contract claims against both Defendants, are precluded, and Count I (breach of implied contract) of their Amended Complaints is dismissed with prejudice.

### Gist of the Action Doctrine

Discover and Citibank argue that Plaintiffs' tort claims are barred by Pennsylvania's "gist of the action doctrine." (Civil Action No. 08-747, Docket No. 4 at 6-9; Civil Action No. 08-832, Docket No. 6 at 8-9). Pennsylvania's gist of the action doctrine "bars claims for allegedly tortious conduct where the gist of the conduct sounds in contract rather than tort." *Hospicomm v. Fleet Bank, N.A.*, 338 F.Supp.2d 578, 582 (E.D. Pa. 2004); *see also Tier 1 Innovation, LLC v. Expert Tech. Group, LP*, Civil Action No. 06-cv–4622, 2007 WL 1377664, at *2 (E.D. Pa. May 8, 2007) (citing *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 n. 3 (3d Cir. 2002)) (the gist of the action doctrine prevents plaintiffs from recovering on a separate tort claim which simply restates a claim for breach of contract). Although the gist of the action doctrine has not been expressly adopted by the Pennsylvania Supreme Court, the Pennsylvania Superior Court and the United States Court of Appeals for the Third Circuit, as well as many United States District Courts, including this Court,

have predicted the Pennsylvania Supreme Court will adopt the doctrine. *See Etoll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002); *Williams v. Hilton Group PLC*, 93 Fed. Appx. 384, 385 (3d Cir. 2004); *see also Cottman Transmission Sys., LLC v. Kershner*, 536 F.Supp.2d 543, 554-55 (E. D. Pa. 2003); *Kraus Indus., v. Moore*, Civil Action No. 06-00542, 2007 U.S. Dist. LEXIS 68869 (W.D.Pa. Sept. 18, 2007).

Judge Terrence F. McVerry, of this District Court, recently ruled on a Motion to Dismiss brought by Defendant Washington Mutual Bank ("WaMu") in a case involving the same Plaintiffs as herein and arising out of the same fraudulent activity associated with Plaintiffs' credit card accounts. *See Grimm v. Washington Mutual Bank,* Civil Action No. 08-828, 2008 U.S. Dist LEXIS 55628 (W.D. Pa. July 22, 2008). Similar to the instant cases, Plaintiffs alleged that WaMu "created a false impression of security" with respect to their accounts.[18]  *Id.* at *1.

In his opinion, Judge McVerry held that Plaintiffs' tort claims for negligence, fraudulent misrepresentation, negligent misrepresentation and negligence *per se* were barred by the "gist of the action doctrine." *Id.* at *4. After a detailed discussion of the current state of the gist of the action doctrine under Pennsylvania law, Judge McVerry found that Plaintiffs' tort claims were based upon their account agreement with WaMu and were "inextricably intertwined" with the alleged failure of WaMu to perform its obligations under the relevant account agreement. *Id.* at *3-4. In their

---

[18] The Grimms brought eight counts against WaMu, including: (1) breach of implied contract; (2) negligence; (3) fraudulent misrepresentation; (4) negligent misrepresentation; (5) breach of fiduciary duty; (6) violations of the Pennsylvania Unfair Trade Practices/Consumer Protection Law ("UTP/CPL"); (7) violation of the Truth in Lending Act ("TILA") and Consumer Credit Protection Act ("CCPA"); and (8) negligence *per se.* (*See* Civil Action No. 08-828, Docket No. 1). This case is now resolved. (Civil Action No. 08-828, Docket No. 29).

complaint against WaMu, Plaintiffs alleged:

> (i) Upon opening the WaMu Credit Cards, the Grimms entered into a contract with WaMu;
> (ii) At all times pertinent thereto, the Grimms put their full faith and trust in WaMu to act in compliance with the terms and conditions of the Contract;
> (iii) WaMu breached its contractual duties and obligations when it failed to protect the Grimms from fraudulent charges of the WaMu Credit Cards and then failed to accept liability for the fraudulent charges; and
> (iv) As a sole direct, proximate and legal cause of WaMu's breach of contract, the Grimms have sustained severe, serious and irreparable harm.

*Id*. at \*3-4 (internal citations omitted).  Here, Plaintiffs allege the following against Discover:

> (i) Upon opening the Discover Credit Card, the Grimms entered into a contract with  Discover.
> (ii) At all times pertinent hereto, the Grimms put their full faith and trust in Discover to act in compliance with the terms and conditions of the Contract.
> (iii) Discover breached its contractual duties and obligations when it failed to protect the Grimms from fraudulent charges on the Discover Credit Card and then failed to accept liability for the fraudulent charges.
> (iv) As a sole, direct, proximate and legal cause of Discover's breach of contract, the Grimms have sustained severe, serious, and irreparable damages and harm.

(Civil Action No. 08-747, Docket No. 1 at ¶¶14-17).  Plaintiffs' Amended Complaint against Bank of America contains identical language.  (Civil Action No. 08-832, Docket No. 1 at ¶¶16-20).  Furthermore, during oral argument, Plaintiffs' counsel stated that, where as here, cardholder agreements govern the parties' contractual relationship, "the gist of the action doctrine probably bars [P]laintiffs' claims." (*Arg't. Trans*. at 22: 9-12).

Based on the nearly identical nature of Plaintiffs' claims in the instant cases to those in

*WaMu*, as well as Plaintiffs' counsel's apparent agreement that the gist of the action doctrine would bar Plaintiffs' claims where express contracts exist, the Court adopts Judge McVerry's opinion in *WaMu* as the law of the case with respect to the applications of the gist of the action doctrine here. *Grimm*, 2008 U.S. Dist. LEXIS 55628, at *4. Accordingly, Counts II (negligence); III (fraudulent misrepresentation); IV (negligent misrepresentation); and VIII (negligence *per se*) are barred by the gist of the action doctrine are dismissed with prejudice in Plaintiffs' cases against Discover and Bank of America.

### *Economic Loss Doctrine*

In addition to the gist of the action doctrine, Bank of America argues that the economic loss doctrine also acts to bar Plaintiffs' tort claims. (Civil Action No. 08-832, Docket No. 6 at 5). Under Pennsylvania law, the economic loss doctrine states that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Adams v. Copper Beach Townhome Cmtys., L.P.* 816 A.2d 301, 305 (Pa. Super. 2003). The doctrine is based on the rationale that "to allow a cause of action for negligent cause of purely economic loss would be to open the door to every person in the economic chain of the negligent person or business to bring a cause of action." *Aikens v. Baltimore & Ohio R.R. Co.*, 501 A.2d 277, 279 (Pa. Super. 1985). Moreover, the United States Court of Appeals for the Third Circuit has stated that, similar to the gist of the action doctrine, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995).

One notable exception to the economic loss doctrine, however, applies to cases involving

claims of negligent misrepresentation, as is the case here. The Pennsylvania Supreme Court has found that purely economic loss may be recoverable under tort theories in limited circumstances involving claims of negligent misrepresentation. *Bilt-Rite Construction., Inc. v. Architectural Studio*, 866 A.2d 270, 288 (Pa. 2005) (holding that the economic loss doctrine does not apply to claims of negligent misrepresentation sounding under Section 552 of the Restatement (2d) of Torts).[19] Rather, in cases involving negligent misrepresentation, the question of whether a plaintiff may maintain a tort action for purely economic loss turns on the source of the alleged duty owed to the plaintiff by the defendant. *Id.* For example, where a defendant has a recognized legal duty (such as by statute) to provide information to a plaintiff, when the plaintiff suffers purely economic losses

---

[19]

Section 552 of the Restatement (2d) of Torts states:

> Information Negligently Supplied for the Guidance of Others**:**
>> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>>> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>>> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
>> (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Restatement (2d) of Torts § 552 (1977).

as a result of the Defendant's negligently supplying that information, the defendant can be held liable. *Id.* A breach of a duty which arises under the provisions of a contract between the parties, however, must be redressed under contract, and therefore, a tort action will not lie. *Id.* A breach of duty arising independently of any contractual duties between the parties, however, may support a tort action. *Id.*

However, the United States Court of Appeals for the Third Circuit has recently stated that the *Bilt-Rite* decision "did not severely weaken the economic loss doctrine." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 177 (3d Cir. 2008). Rather, the court in *Bilt-Rite* simply made an exception to the doctrine to allow a commercial plaintiff recourse from an expert supplier of information with whom the plaintiff has no contractual relationship, when the plaintiff has relied on that person's special expertise and the "supplier negligently misrepresents the information to another in privity." *Bilt-Rite,* A.2d at 286. Furthermore, the court emphasized that "for common law negligent misrepresentation claims, the economic loss rule still applies." *Id.* at 287.

Here, the Court finds that the narrow exception to the economic loss doctrine carved out by the Pennsylvania Supreme Court in *Bilt-Rite* does not apply. Plaintiffs are not commercial entities and their claims[20] arise out of their contractual relationship with Defendant financial institutions. Moreover, Plaintiffs have not alleged that they suffered physical injury as a result of the Defendants' conduct or that their previous injuries were aggravated by either Defendants' conduct. Accordingly,

---

[20]

A commercial tort claim is "a claim arising in tort when the claimant is either (1) an organization, or (2) an individual whose claim arose in the course of the claimant's business or profession, and the claim does not include damages arising out of personal injury or death. BLACK'S LAW DICTIONARY 286 (8th ed 2004) (citing UCC § 9-102(a)(13)).

the Court finds that the economic loss doctrine is an additional basis upon which to dismiss Plaintiffs' tort claims. Therefore, Plaintiffs' tort claims are dismissed with prejudice.

### Breach of Fiduciary Duty

Discover and Bank of America also argue that Plaintiffs' breach of fiduciary duty claims fail as a matter of law because Pennsylvania law does not recognize a fiduciary relationship between a lender and a borrower, absent special circumstances which are not present in the instant cases. (Civil Action No. 08-747, Docket No. 4 at 5-6; Civil Action No. 08-832, Docket No. 6 at 9-10). The issue of the existence of a fiduciary duty between Plaintiffs herein and a lender was discussed in Judge McVerry's opinion in *Grimm v. WaMu*. *Grimm*, 2008 U.S. Dist. LEXIS 55628 at *4-5. With regard to Plaintiffs' breach of fiduciary claim against WaMu, Judge McVerry found that under Pennsylvania law, a fiduciary duty exists when there is a "special relationship," which is one "involving confidentiality, the repose of special trust or fiduciary responsibilities." *Id.* at *5 (citing *eToll Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa Super. 2002)). Judge McVerry found no such relationship between Plaintiffs and WaMu, stating that the parties had "simply entered into a commercial, arms-length contract with one another and that is not sufficient to create a fiduciary relationship." *Id.* Accordingly, Judge McVerry held that Plaintiffs' breach of fiduciary duty claim failed as a matter of law and granted WaMu's motion to dismiss the same. *Id.* The Court finds Judge McVerry's opinion persuasive and adopts said opinion with respect to Plaintiffs' breach of fiduciary duty claim. The Court finds no fiduciary duty running from Discover or Bank of America to Plaintiffs, and Count V (breach of fiduciary duty) of Plaintiffs' Amended Complaints is dismissed with prejudice.

*Violations of Pennsylvania's Unfair Trade Practices/Consumer Protection Law ("UTP/CPL")*

Plaintiffs allege that Discover and Bank of America violated the UTP/CPL by "creating a false impression of security by promising that the Discover Credit Card would be secure from fraudulent activity and, if a breach occurred, would not hold the Plaintiffs accountable for the fraudulent charges to the Discover Credit Card." (Civil Action No. 08-747, Docket No. 1 at ¶52; Civil Action No. 08-832, Docket No. 1 at ¶55).

In response, Discover and Bank of America put forth a variety of arguments in support of their Motions to Dismiss, the essence of each being that Plaintiffs have failed to allege the necessary elements of a UTP/CPL claim. Each Defendant contends that the Plaintiffs' UTP/CPL claims fail because Plaintiffs' failed to plead all of the elements of common law fraud, which, Defendants contend is a requirement under the UTP/CPL's "catch-all" provision. (Civil Action No. 08-747, Docket No. 4 at 13; Civil Action No. 08-832, Docket No. 6 at 13-14). Additionally, Discover contends that the UTP/CPL does not impose liability on parties who have not themselves committed any wrongdoing. (Civil Action No. 08-747, Docket No. 4 at 12). Here, Plaintiffs asserted that it was an unidentified third party who defrauded them and engaged in actionable conduct. (*Id.*). Furthermore, Bank of America argues that Plaintiffs' UTP/CPL claim fails because Plaintiffs failed to allege sufficient facts that any money or property was lost as a result of any unfair practices of Bank of America. (Civil Action No. 08-832, Docket No. 6 at 3-4). Finally, Bank of America contends that Plaintiffs fail to allege that they purchased or leased any goods or services "primarily for personal, family or household purposes," which they argue is a requirement to a cause of action

under the UTP/CPL. (Civil Action No. 08-832, Docket No. 6 at 13).

The UTP/CPL provides a private right of action to:

> [a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act.

73. P.S. §201-9.2(a). Section 3 provides that:

> [u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act and regulations promulgated under section 3.1 of this act are hereby declared unlawful.

73 P.S. §201-3. Plaintiffs do not specify which subclauses of Section 2 Discover or Bank of America allegedly violated, leaving the Court with little guidance in analyzing their claims under the UTP/CPL.

The underlying foundation of the UTP/CPL is fraud prevention. *Weinberg,* 777 A.2d at 446. Furthermore, the Pennsylvania Supreme Court has consistently held that "to bring a private cause of action under the UTP/CPL, a plaintiff must show that he *justifiably relied* on the defendant's wrongful conduct or representation and that he suffered harm *as a result of* that reliance." *Yocca v. Pittsburgh Steelers Sports Inc.*, 854 A.2d 425, 438 (Pa. 2004) (emphases added). *see also Weinberg*, 777 A.2d at 446 (providing that "nothing in the legislative history [of the UTP/CPL] suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation"); and *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 201 (Pa. 2007) (construing *Weinberg* to have settled that justifiable reliance on a misrepresentation is an element of UTP/CPL claims). The United States Court of Appeals for the

Third Circuit has held likewise, that in a private cause of action, a plaintiff must show that he justifiably relied on a false misrepresentation and that he suffered harm as a result of that reliance. *See Tran v. Metropolitan Life Ins. Co.*, 408 F.3d 130, 140 (3d Cir. 2005); *Santana Products Inc. v. Bobrick Washroom Equip. Inc.*, 401 F.3d 123, 136 (3d Cir. 2005). Recently, this Court has held that, pursuant to Pennsylvania law governing claims brought under the UTP/CPL, Plaintiffs must demonstrate, at a minimum, a false misrepresentation, justifiable reliance upon the misrepresentation, and causation.[21] *See Cehula v. Janus Distributors, LLC*, 2008 U.S. Dist LEXIS 56406 (W.D. Pa. July 23, 2008).

As previously stated, Plaintiffs fail to specify in their Amended Complaints which subclause of the UTP/CPL the Defendant allegedly violated. However, in their Response Briefs, Plaintiffs focus on subclause (xxi) of the UTP/CPL, commonly known as the "catch-all" provision. (Civil Action No. 08-747, Docket No. 7 at 4-5; Civil Action No. 08-832, Docket No. 10 at 6-8). Under subclause (xxi), one engages in unfair or deceptive acts or practices by "engaging in other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. §201-2(4)(xxi).

As this Court explained in *Cehula,* prior to the 1996 amendment to the UTP/CPL, when the words "or deceptive conduct" were added to subclause (xxi), a plaintiff alleging a violation of the catch-all provision had to establish, as Defendants suggest, all of the elements of common law

---

[21]

The causation requirement under the UTP/CPL is express on the face of section 9.2. 73 P.S. §201-9.2(a) (affording a private right of action to those who suffer loss "as a result of" the use or employment of an act made unlawful by the UTP/CPL).

fraud.[22] *Cehula, et al. v. Janus Distributors, LLC.* , Civil Action No. 07-00113, 2008 U.S. Dist. LEXIS 56406 at *7 (citing *Commonwealth v. Percudani*, 825 A.2d 743, 746 (Pa.Cmwlth. 2003)). However, after the 1996 amendment to subclause (xxi), two divergent views have emerged regarding the effect of the addition of the words "or deceptive conduct," creating a split between Pennsylvania appellate courts as to which level of proof a plaintiff alleging a violation of the catch-all provision must establish at trial. *See Cehula,* 2008 U.S. Dist. LEXIS 56406 at *7 (discussing the difference amongst Pennsylvania courts regarding the standard of proof with respect to the catch-all provision of the UTP/CPL).

Regardless of whether a less restrictive standard of proof applies as a result of the 1996 Amendments, this Court has held that plaintiffs still must demonstrate the requirements of *any* claim brought under the UTP/CPL, as espoused by the Pennsylvania Supreme Court: (1) that the Defendant made a false misrepresentation or engaged in deceptive conduct; (2) which the Plaintiffs justifiably relied upon; and (3) suffered loss as a result of such reliance. *Id.* at *8 (citing *Toy*, 928 A.2d at 201-202).

Plaintiffs' claims brought under the UTP/CPL fail for two reasons. First, Plaintiffs do not allege that the Defendant made a false misrepresentation, instead they contend that the Defendants created a "false impression of security." (Civil Action No. 08-747, Docket No. 1 at ¶52, Civil

---

[22]

Similarly to a UTP/CPL claim, the elements of a common law fraud claim are: (1) material misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded by the misrepresentation; and (5) damages to the party defrauded as a proximate result. *See Bauer v. Beneficial Consumer Discount Co.*, Civil Action No. 07-00247, 2007 WL 4269804, at *3 (W.D. Pa. Dec. 3, 2007) (citations omitted).

Action No. 08-832, Docket No. 1 at ¶55). Secondly, the Plaintiffs do not allege that the Defendant engaged in "deceptive conduct."

Moreover, Plaintiffs do not demonstrate how the false impression of security allegedly created by Defendant caused the Plaintiffs' losses. In order to recover under the UTP/CPL, a plaintiff must have suffered loss *as a result of* justifiably relying upon a false misrepresentation. *Toy*, 928 A.2d at 201; *see also Cehula,* 2008 U.S. Dist. LEXIS 56406 at *9 (emphasis added). Accordingly, Defendants' Motions to Dismiss with respect to Count VI (violation of Pennsylvania's UTP/CPL) are granted, without prejudice, in that the Court grants the Plaintiffs' request for leave to amend their claims brought under the UTP/CPL in order to meet the required pleading standard. (*Arg't. Trans*. at 24:4-6).

### *Violations of TILA/CCPA[23]*

Discover and Bank of America argue that Plaintiffs' claims brought under TILA/CCPA (Count VII) should be dismissed due to Plaintiffs' failure to bring their actions within TILA's statute of limitations. (Civil Action No. 08-747, Docket No. 4 at 16; Civil Action No. 08-832, Docket No. 6 at 14). Plaintiffs do not specifically respond to Defendants' contention; instead, they simply reiterate their claim that under 15 U.S.C. § 1643, "a credit card holder incurs no liability from the unauthorized use of a credit card," implying that the Plaintiffs have met all of the conditions of § 1643(a). (Civil Action No. 08-747, Docket No. 7 at 5).

The Court declines to enter into an analysis regarding the applicability of the statute of

---

[23]

TILA is contained in subchapter I of the CCPA. 15 U.S.C. §1601 *et seq*.

limitations governing TILA as the section of TILA upon which Plaintiffs rely, 15 U.S.C. §1643, only applies to actions in which card issuers, i.e. Defendants herein, seek to enforce liability for the use of a credit card.[24]  *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162 (3d Cir. 2008). The United States Court of Appeals for the Third Circuit has held that section 1643 "does not address, nor is even concerned with, the liability of a [credit card issuer]." *Id.* at 175.  Furthermore, TILA § 1643 does not impose any obligation on issuers of credit cards to pay the costs associated with unauthorized or fraudulent use of credit cards.  *Id.*  Accordingly, because section 1643 has no applicability to the instant case, Count VII of Plaintiffs' Amended Complaints is dismissed, with prejudice.

## VII.    CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant Discover's Motion to Dismiss Plaintiffs' Amended Complaint (Civil Action No. 08-747, Docket No. 4) and Defendant Bank of America's Motion to Dismiss Plaintiffs' Amended Complaint (Civil Action No. 08-832, Docket No. 6), with prejudice, with respect to Counts I (breach of implied contract), II (negligence), III (fraudulent misrepresentation), IV (negligent misrepresentation), V (breach of fiduciary duty), VII (violation of TILA/CCPA) and VIII (negligence *per se*) at Civil Action Nos. 08-747 and 08-828. In addition, the Court **GRANTS** Defendant Discover's Motion to Dismiss Plaintiffs' Amended Complaint (Civil Action No. 08-747, Docket No. 4) and Defendant Bank of America's Motion to Dismiss Plaintiffs' Amended Complaint (Civil Action No. 08-832, Docket No. 6), without prejudice,

---

[24] In the instant case, it is the Plaintiffs who seek to enforce liability against Defendants.

33

as to Count VI (violation of UTP/CPL) of Plaintiffs' Amended Complaints at Civil Action Nos. 08-747 and 08-828, granting Plaintiffs leave to amend Count VI of each Amended Complaint in accordance with this Opinion. Appropriate orders to follow.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: November 4, 2008.
cc/ecf: All counsel of record

34